## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DESMOND C. PARKER**                                    **CIVIL ACTION**

**VERSUS**                                                         **NO. 16-1609**

**MARLIN N. GUSMAN, ET AL.**                       **SECTION: "S"(1)**

## PARTIAL REPORT AND RECOMMENDATION

Plaintiff, Desmond C. Parker, a state prisoner, filed this *pro se* and *in forma pauperis* civil action pursuant to 42 U.S.C. § 1983. In his original complaint,[1] he sued Sheriff Marlin N. Gusman, Deputy O. Woods, Correct Care Solutions, LLC,[2] and Dr. Xuong Nguyen[3] claiming: (1) he was denied adequate medical care; (2) inmates were denied needed assistance; (3) his personal property was lost;[4] and (4) he was sexually assaulted.

Plaintiff was subsequently granted leave to amend the complaint to add Shontrell Cooper, Deputy D. Tapp, and Deputy D. Harris as defendants. Plaintiff alleged that Cooper was deliberately indifferent to plaintiff's need for medical care, in that she "ignored plaintiff's cries for help regarding his continuing pain & suffering." With respect to Tapp and Harris, plaintiff alleged that those deputies were present while plaintiff was being sexually assaulted and yet failed to take any action to protect him.[5]

---

[1] Rec. Doc. 1.
[2] Correct Care Solutions was incorrectly identified in the complaint as "Correctional Care Services."
[3] Dr. Nguyen was incorrectly identified in the complaint as "Dr. Nyugen."
[4] Plaintiff later supplemented his complaint to include a list of the misplaced items. Rec. Doc. 26.
[5] Rec. Docs. 31 and 32.

Correct Care Solutions and Dr. Nguyen have filed motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[6]  Plaintiff opposed those motions.[7]  Correct Care Solutions then filed a reply to plaintiff's opposition,[8] and plaintiff filed a sur-reply.[9]

## I.  Rule 12(b)(6)

It is clear that "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court."  Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007) (quotation marks and ellipsis omitted).  Accordingly, Rule 12(b)(6) allows a defendant to move for expeditious dismissal when a plaintiff fails to state a claim upon which relief can be granted.  In ruling on a 12(b)(6) motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."  In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted).  Further, "[t]o survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Id. (citation, footnote, and quotation marks omitted).  On that point, the United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a

---

[6] Rec. Docs. 36 and 38.
[7] Rec. Docs. 40 and 52.
[8] Rec. Doc. 46.
[9] Rec. Doc. 49.

defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

## II.  Defendants' Motions

In their motions to dismiss, Correct Care Solutions and Dr. Nguyen argue that plaintiff failed to exhaust his administrative remedies as required by federal law, and, in any event, his claims against them are meritless because his medical care did not violate constitutional standards. In its motion, Correct Care Solutions also additionally argues that plaintiff is seeking to hold it liable based on the theory of *respondeat superior*, despite the fact that § 1983 claims cannot be premised on that theory.  The Court will address each of these arguments in turn.

## A.  Exhaustion of Administrative Remedies

The Prison Litigation Reform Act of 1995 ("PLRA"), as amended, provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Federal courts have taken a strict approach to this requirement.  For example, the United States Supreme Court held that the exhaustion requirement is "mandatory," Porter v. Nussle, 534 U.S. 516, 524 (2002), and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong," id. at 532.  The Supreme Court further held that "an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."  Booth v. Churner, 532 U.S. 731, 741 n.6 (2001). The United States Fifth Circuit Court of Appeals therefore concluded that "[q]uibbles about the nature of a prisoner's complaint, the type of remedy sought, and the sufficiency or breadth of

3

prison grievance procedures were laid to rest in <u>Booth</u>."  <u>Wright v. Hollingsworth</u>, 260 F.3d 357,

358 (5th Cir. 2001).  Moreover, the Fifth Circuit emphatically held that the exhaustion requirement

cannot be excused by a federal court, stating:

> [T]here can be no doubt that pre-filing exhaustion of prison grievance processes is
> mandatory. …  District courts have no discretion to excuse a prisoner's failure to
> properly exhaust the prison grievance process before filing their complaint.  It is
> irrelevant whether exhaustion is achieved during the federal proceeding.  Pre-filing
> exhaustion is mandatory, and the case must be dismissed if available administrative
> remedies were not exhausted.

<u>Gonzalez v. Seal</u>, 702 F.3d 785, 788 (5th Cir. 2012) (footnote omitted).

However, despite the foregoing, it is also clear that exhaustion is an affirmative defense on

which the defendant bears the burden of proof.  <u>See, e.g.</u>, <u>Abbott v. Babin</u>, 587 Fed. App'x 116,

118 (5th Cir. 2014) ("When defendants seek to avail themselves of the affirmative defense of

failure to exhaust, they bear the burden of showing that administrative remedies were not

exhausted."); <u>Morgan v. Texas Department of Criminal Justice McConnell Unit</u>, 537 Fed. App'x

502, 508 (5th Cir. 2013); <u>Dillon v. Rogers</u>, 596 F.3d 260, 266 (5th Cir. 2010).  Of course, "it is

easy work to establish that dismissal is appropriate pursuant § 1997e(a) in the context of a properly

supported motion for summary judgment under Rule 56 ...."  <u>Coleman v. Terrebonne Parish</u>

<u>Criminal Justice Complex</u>, Civ. Action No. 13-4325, 2013 WL 6004051, at *2 (E.D. La. Nov. 13,

2013).  Here, however, the defendants did not file motions for summary judgment.

Instead, they opted to assert the defense in Rule 12(b)(6) motions.  Although the defense

may be asserted in such motions, it is difficult to prevail since the Court is normally limited to

reviewing only the complaint in considering a Rule 12(b)(6) motion.  Therefore, for an exhaustion

argument to succeed in this context, a plaintiff must generally concede in his complaint that

administrative remedies were in fact available and that he simply did not utilize them.  <u>See Carbe</u>

4

v. Lappin, 492 F.3d 325, 328 (5th Cir. 2007) (noting that a dismissal for failure to state a claim predicated on a failure to exhaust is appropriate "if the complaint itself makes clear that the prisoner failed to exhaust").

Plaintiff makes no such concession in this case.  Rather, he expressly states in his complaint that there was a grievance procedure *and* that he presented the facts relating to this complaint to prison officials by utilizing that procedure.[10]  Although he failed to answer a follow-up question on the form asking if he completed all steps in the grievance procedure,[11] he was under no obligation to provide that information.  On the contrary, he could have left unanswered *all* of the questions concerning exhaustion, because, as the United States Supreme Court has explained, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones v. Bock, 549 U.S. 199, 216 (2007).  In any event, in a subsequent filing, plaintiff stated under penalty of perjury that all of his grievances were "closed" after the first step and that no appeal process was in fact available.[12]

In light of the foregoing, and because this Court must accept all of plaintiff's well-pleaded facts as true and view them in the light most favorable to him in considering a motion to dismiss, the undersigned declines to recommend dismissal on exhaustion grounds.

---

[10] Rec. Doc. 1, p. 2.

[11] Rec. Doc. 1, p. 3.

[12] Rec. Doc. 49, p. 2.  The United States Fifth Circuit Court of Appeals has held that, when a district court is considering a motion to dismiss in a case filed by a *pro se* plaintiff, the court must consider the "complaint under the less stringent standards applicable to pro se litigants." Howard v. King, 707 F.2d 215, 220 (5th Cir. 1983).  In such cases, the district court is "required to look beyond the [plaintiff's] formal complaint and to consider as amendments to the complaint those materials subsequently filed." Id.  Therefore, a *pro se* litigant's supplemental filings which embellish the original complaint's averments may appropriately be considered when ruling on a motion to dismiss. Id.

5

## B.  The Constitutionality of Plaintiff's Medical Care

The defendants next argue that, in any event, plaintiff's allegations are insufficient to state

a claim for unconstitutional medical care.  In support of his medical claims, plaintiff states:

> On December 17th, 2014 plaintiff fractured his left ankle in an unrelated
> incident.  After being transported to the hospital, an x-ray was done reveling [sic]
> a severe fracture.  Plaintiff was asked if he had insurance he replied "no" he was
> then told that he would be scheduled for orthopedic surgery, a splint was put on
> him from there he was transported to Orleans Parish Prison or (OPP).  Over three
> & a half months later through rigorus [sic] attempts for medical attention, plaintiff's
> first medical appointment in OPP was the first encounter with Dr. Nyugen [sic].
> The results are still unclear because Nyugen [sic] did not speak but very little
> english.  The only thing understood was "you better" and to "exercise three times a
> day."   The next day I was transported to LSU for one of several missed
> appointments due to negligence off [sic] OPP & CCS staff.  LSU did an x-ray then
> they put a cast on my foot because it was severely fractured.
> On June 16, 2015 plaintiff returned to LSU to have the cast removed, once
> again an x-ray was done this time revealing an old tongue type calcaneus fx that
> had healed.  When I asked why it still hurts just as bad as when I first fractured it,
> I was told by LSU Dr. Thon that due to the length of time between the injury &
> when the cast was put on, my ankle had healed wrong, then he further explained
> that I would have severe arthritis for the rest of my life.  All of which could've been
> prevented if the medical staff as well as the deputies at OPP would have done there
> [sic] jobs and cared for the plaintiff's needs.[13]

The federal constitutional law concerning inmate medical care is clear:  regardless of

whether the inmate is a pretrial detainee or a convicted prisoner, his federal constitutional rights

are violated if his "serious medical needs" are met with "deliberate indifference" on the part of

penal authorities.  See Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001);

Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999).

The United States Fifth Circuit Court of Appeals has explained that "[a] serious medical

need is one for which treatment has been recommended or for which the need is so apparent that

---

[13] Rec. Doc. 1, pp. 6-7.

even laymen would recognize that care is required."  Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006).  Here, plaintiff alleges that he had a painful ankle fracture which went without appropriate treatment and, as a result, he will suffer from arthritis for the rest of his life.  The Fifth Circuit has held that "non-life-threatening injuries are a serious medical need where the injuries induced severe pain."  Thomas v. Carter, 593 Fed. App'x 338, 342 (5th Cir. 2014).   The undersigned therefore finds that plaintiff has properly alleged the existence of a "serious medical need."  Cf. Watkins v. Lancor, 558 Fed. App'x 662, 666 (7th Cir. 2014) (holding that an inmate alleging that he was in "extreme pain" from a broken finger had alleged the existence of a serious medical need); Hunt v. Sandhir, 295 Fed. App'x 584, 586 (4th Cir. 2008) (a "fractured elbow" which caused "terrible pain" was a serious medical need); Gray v. Dorning, No. 99-5212, 1999 WL 1336118, at *1 (6th Cir. Dec. 20, 1999) ("We find that [plaintiff's] broken wrist constituted a serious medical need."); Harris, 198 F.3d at 159-60 (holding that an inmate with a broken jaw and "excruciating pain" stated a claim for relief); Brown v. Hughes, 894 F.2d 1533, 1538 (11th Cir. 1990) (finding that a broken foot was a serious medical need); Sears v. Gusman, Civ. Action No. 16-2935, 2016 WL 4991539, at *2 (E.D. La. Aug. 31, 2016) ("[A] 'broken ankle' causing 'severe pain' can constitute a 'serious medical need.'"), adopted, 2016 WL 4942845 (E.D. La. Sept. 16, 2016).

However, for plaintiff to state a cognizable claim, he must also allege that his "serious medical need" was met with "deliberate indifference."   Regarding the "deliberate difference" requirement, the United States Fifth Circuit Court of Appeals has explained:

> Deliberate indifference is an extremely high standard to meet.  It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference.  Rather, the plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly,

or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.  Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment.  And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks, brackets, and citations omitted).  "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind."  McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

Plaintiff's allegations are insufficient to state a claim for "deliberate indifference" against Dr. Nguyen.  In fact, the only allegation against Dr. Nguyen is that he examined plaintiff for the first time over three months after he entered the jail, proclaimed him to be "better," and advised him to exercise.  There is no allegation that Dr. Nguyen had any involvement in plaintiff's medical care (or lack thereof) prior to that first examination, much less that he refused to treat plaintiff or ignored his complaints.  Moreover, even if the Court is meant to infer from the complaint that plaintiff believes that Dr. Nguyen's examination on that occasion was subpar in some respect, there is no suggestion that Dr. Nguyen intentionally misdiagnosed plaintiff during that examination, purposely denied him necessary treatment, or otherwise showed a wanton disregard for plaintiff's condition.[14]  Without more, plaintiff's allegations against Dr. Nguyen would, at worst, suggest only negligence or medical malpractice – and it is clear that allegations of negligence or malpractice are insufficient to state a federal constitutional claim.  Hall v. Thomas,

---

[14] The Court additionally notes that plaintiff states that he was transported to the hospital for follow-up care the day after Dr. Nguyen's initial examination.

Case 2:16-cv-01609-JVM   Document 61   Filed 11/08/16   Page 9 of 14


190 F.3d 693, 697-98 (5th Cir. 1999); see also Kelly v. Gusman, Civ. Action No. 07-611, 2007 WL 2007992, at *4 (E.D. La. July 5, 2007); Cerna v. Texas Tech Medical Staff, No. 2:03-CV-0322, 2004 WL 42602, at *2 (N.D. Tex. Jan. 7, 2004).  Claims of negligence or medical malpractice present issues of *state law* for *state courts*, not federal constitutional issues for a federal court.  See Estelle v. Gamble, 429 U.S. 97, 107 (1976); Coleman v. Terrebonne Parish Criminal Justice Complex, Civ. Action No. 13-4325, 2013 WL 6004051, at *4 (E.D. La. Nov. 13, 2013).  Therefore, even if all of the well-pleaded facts against Dr. Nguyen are accepted as true and viewed in the light most favorable to plaintiff, he has not pleaded sufficient facts to state a claim to relief against Dr. Nguyen that is plausible on its face.  Accordingly, Dr. Nguyen's motion should be granted.

As noted, Correct Care Solutions similarly argues in its motion that plaintiff's allegations are insufficient to state a claim for unconstitutional medical care by the corporation's other employees.  However, the undersigned pretermits consideration of that issue, because the claim against Correct Care Solutions fails for the alternative reason raised in their motion and discussed below.

## C.  Lack of a Basis for Holding Correct Care Solutions Liable

Correct Care Solutions opines that plaintiff's attempt to hold the corporation liable for the actions or inactions of its employees appears to be based on a theory of *respondeat superior.*  The undersigned agrees and notes that it is beyond cavil that a § 1983 claim cannot be based on any such theory of vicarious liability.  See Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or *respondeat superior* liability."); Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987) ("Under section 1983, supervisory officials are not liable for the actions

of subordinates on any theory of vicarious liability."); see also Grandpre v. Correct Health, Civ. Action No. 16-1543, 2016 WL 4539442, at *8 (E.D. La. Aug. 29, 2016), adopted, 2016 WL 4987265 (E.D. La. Sept. 19, 2016); Easter v. Lafourche Parish Sheriff's Office, Civ. Action No. 13-5797, 2014 WL 3687239, at *3 (E.D. La. July 23, 2014).  Because Correct Care Solutions cannot be held vicariously liable for its employees and because plaintiff has not properly alleged any other basis on which the corporation itself violated his rights, such as by adopting a constitutionally deficient custom, policy, or practice which resulted in his injuries, plaintiff has failed to state a claim against the corporation.[15]  Accordingly, Correct Care Solutions' motion should be granted.

### III.  Mandatory Screening

In addition to considering the pending motions, the Court also has an affirmative duty to screen plaintiff's complaint.  Specifically, federal law mandates that federal courts "review, before

---

[15]  Out of an abundance of caution, the undersigned notes that plaintiff states in his opposition that the corporation's "policies or lack thereof, will all come to light through discovery."  Rec. Doc. 40, p. 2.  However, that statement is purely speculative, and it is nothing more than an attempt to infer that such a policy must exist based on the fact that plaintiff was harmed.  That obviously does not suffice.  See, e.g., Sears ex rel. Sears v. Lee, Civ. Action No. 08-3418, 2010 WL 324385, at *5 (E.D. La. Jan. 20, 2010) ("Plaintiff alone infers a broad custom or policy from an isolated incident or simply assumes, based on the severity of Patrick's injuries, that an unconstitutional policy must be at fault. Without a more concrete causal connection between [the corporation providing inmate medical care] and the actions of its employees, Plaintiff's claim too closely mirrors simple vicarious liability which is unsustainable in this § 1983 action.").  Moreover, in any event, this lawsuit was filed over eight months ago, and there is no indication that plaintiff has properly sought discovery, much less that such discovery has revealed the existence of such a policy.

   Lastly, the undersigned also notes that plaintiff subsequently attempted to identify a policy in his sur-reply, alleging that the corporation has a policy of authorizing "temporary prescriptions for permanent & ongoing medical conditions."  Rec. Doc. 49, p. 1.  However, even if the Court assumes that such a policy exists, plaintiff's argument is misplaced for two reasons.  First, plaintiff's medical claim as stated in his complaint is *not* that he was *denied medically necessary medication*; rather, it is that the delay in providing proper medical care resulted in a life-long injury because his fracture healed incorrectly.  Therefore, the cited policy is irrelevant to the claim at issue.  Second, in any event, even if plaintiff's complaint is broadly construed as to incorporate a medication claim, the cited policy simply is not indicative of "deliberate indifference."  There is no suggestion that the policy was implemented or enforced as a means to deny necessary medication; on the contrary, such a policy would seem to be a reasonable means to ensure that medications are no longer used if they become unnecessary.  Plaintiff does not even suggest that the policy was adopted or used as subterfuge to intentionally deny needed medical care or that the policy, either by its terms or in practice, prohibits a new prescription for the same medication if it remains medically necessary.

docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."   28 U.S.C. § 1915A(a).   Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> (1)     is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2)     seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action …
>
> (i)     is frivolous or malicious;
> (ii)    fails to state a claim on which relief may be granted; or
> (iii)   seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

Although broadly construing plaintiff's complaint,[16] the undersigned recommends that, for the following reasons, one of plaintiff's remaining claims be dismissed as frivolous and/or for failing to state a claim on which relief may be granted.

---

[16] The Court must liberally construe a *pro se* civil rights complaint.  See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

In addition to the medical claims already discussed herein, plaintiff asserts three other claims.  One of those remaining claims is that his personal property was lost during a jail transfer. He alleges:

> After being transferred on 9/12/15 my property including all legal documents was somehow lost.  After repeated attempts by myself, my lawyer, & friends to find out what happened to my property it has yet to be discovered.  The items lost may have been of little concern to OPP, but to me it was my life!  I had almost a solid year's worth of legal research that could never be replaced not including pictures, police reports, discovery package etc.[17]

While the undersigned in no way means to diminish the seriousness of a property loss to an inmate, such a loss simply is not one which rises to the level of a federal constitutional violation. In Parratt v. Taylor, 451 U.S. 527 (1981), the United States Supreme Court held that where a state actor, through his random and unauthorized actions, *negligently* deprives a prisoner of his property, there is no constitutional violation *if* the state provides an adequate postdeprivation remedy.  In Hudson v. Palmer, 468 U.S. 517 (1984), the Supreme Court extended that holding to *intentional* deprivations of property.  In Daniels v. Williams, 474 U.S. 327, 330-31 (1986), the Supreme Court then overruled Parratt in part, holding that merely negligent deprivations of property simply do not implicate constitutional protections *at all*.

Therefore, it is of no consequence whether plaintiff is alleging that he was deprived of his property through negligence or an intentional act, because "in neither instance does he state a valid § 1983 action for deprivation of property."  Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005). If he is claiming negligence, his claim is barred by Daniels.  If he is claiming intentional conduct, the claim is barred by Hudson, in that Louisiana law clearly provides him with an adequate

---

[17] Rec. Doc. 1, p. 8.

postdeprivation remedy, i.e. a tort suit brought in state court.  Marshall v. Norwood, 741 F.2d 761, 764 (5th Cir. 1984); see also Bennett v. Louisiana Department of Public Safety and Corrections, No. 02-30593, 2001 WL 1109690 (5th Cir. Feb. 19, 2003); Odom v. St. Tammany Parish S.O., Civ. Action No. 09-0109, 2009 WL 1147925, at *3 (E.D. La. Apr. 28, 2009).  Accordingly, his lost property claim is properly dismissed as frivolous and for failure to state a claim on which relief may be granted.  Jackson v. Maes, 392 Fed. App'x 317, 318 (5th Cir. 2010); Robinson v. Robledo, 209 Fed. App'x 432 (5th Cir. 2006); Cochran v. Baldwin, 196 Fed. App'x 256, 257 (5th Cir. 2006); Hall v. St. Tammany Parish, Civ. Action No. 10-1872, 2010 WL 5558910, at *6-8 (E.D. La. Dec. 21, 2010), adopted, 2011 WL 63662 (E.D. La. Jan. 6, 2011); Scott v. Travis, Civ. Action No. 07-6272, 2007 WL 3124683, at *3 (E.D. La. Oct. 25, 2007).

## IV.  Remaining Claims

The undersigned notes that this Partial Report and Recommendation does not address the remaining claims against Sheriff Marlin N. Gusman, Shontrell Cooper, and Deputies Woods, Tapp, and Harris.  Because those defendants have not filed motions to dismiss, and because the remaining claims against them are not patently frivolous, those claims should be allowed to proceed pending further development.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the motions to dismiss filed by Correct Care Solutions, LLC, and Dr. Xuong Nguyen, Rec. Docs. 36 and 38, be **GRANTED** and the claims against those defendants be **DISMISSED WITHOUT PREJUDICE**.

It is **FURTHER RECOMMENDED** that plaintiff's lost property claim be **DISMISSED WITHOUT PREJUDICE** to his right to assert his claim in state court.

13

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this eighth day of November, 2016.


_____
**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**