# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DESMOND C. PARKER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-1609-JVM** |
| **MARLIN N. GUSMAN, ET AL.** | |

## ORDER AND REASONS

Plaintiff, Desmond C. Parker, a state prisoner, filed this *pro se* and *in forma pauperis* federal civil rights action against Sheriff Marlin N. Gusman, Deputy O. Woods, Correct Care Solutions, LLC, and Dr. Xuong Nguyen. Plaintiff claimed that he was denied adequate medical care, inmates were denied needed assistance, his personal property was lost, and he was sexually assaulted.[1]

Plaintiff was subsequently granted leave to amend the complaint to add Deputy D. Tapp, Deputy D. Harris, and Shontrell Cooper as defendants. Plaintiff alleged that Tapp and Harris were present while plaintiff was being sexually assaulted and yet failed to take any action to protect him. Plaintiff alleged that Cooper was deliberately indifferent to his need for medical care, in that she "ignored plaintiff's cries for help regarding his continuing pain & suffering."[2]

The claims against Correct Care Solutions, LLC, Dr. Nguyen, and Marlin Gusman were subsequently dismissed, as was plaintiff's claim concerning his lost property.[3]

Accordingly, only the following claims remain in this lawsuit: (1) Deputy O. Woods sexually assaulted plaintiff during a strip search; (2) Deputies D. Tapp and D. Harris were present during that sexual assault and yet failed to take any action to protect plaintiff; and (3) Shontrell

---

[1] Rec. Doc. 1.
[2] Rec. Docs. 31 and 32.
[3] Rec. Docs. 67 and 80.

Cooper was deliberately indifferent to plaintiff's need for medical care. The remaining defendants have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).[4]

### **Claim against Deputy Woods**

Deputy Woods has filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[5] Plaintiff has opposed that motion.[6]

In reviewing a motion for summary judgment, the Court may grant the motion when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

"Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (internal quotation marks omitted); accord Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001). The Court has no duty to search the

---

[4] Rec. Doc. 70.
[5] Rec. Doc. 101. Sheriff Gusman also joined in that motion. However, plaintiff's only claim against Gusman was that he and his employees "breached their duty of care" when plaintiff and inmate Jamal Hatton "were left in a cell at OPP for hours on end without water or bathroom." Rec. Doc. 1, p. 4. That claim has already been dismissed. See Rec. Docs. 80 and 82. Accordingly, there are no remaining claims against Gusman.
[6] Rec. Doc. 103.

record for evidence to support a party's opposition to summary judgment; rather, "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary judgment. Id.; Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996).

In this lawsuit, plaintiff claims that he was sexually assaulted by Deputy Woods during a strip search. Plaintiff states his claim as follows:

> On 2/8/16 at the new jail Orleans Justice Center or (OJC), during a shake down I was strip searched in the shower on the third floor E-side. After removing all of my clothes I proceeded to squat & cough. Deputy O. Woods who was conducting the search said "no, turn around and bend over." I thought he meant to turn around & squat & cough, so when I turned around he pushed me over a plastic chair that was in the shower & put his hands in between my butt checks & tried to manually spread my cheeks. I immediately jumped away, of course feeling violated & further injuring my ankle again. Two other deputies were present in the shower when this happened, Deputies D. Tapp & D. Harris. Once I asked him what he was doing & at the same time explaining that he can NOT touch me like that all of the deputies were laughing. Woods in particular was staring at my penis and smiling.[7]

In connection with his motion, Deputy Woods has presented evidence that a syringe was taken from the jail nurse's medical cart on February 8, 2016. As a result of that incident, officers conducted a systematic search "shakedown" of all inmates housed on the dorm. As part of that search, Woods performed the strip search of plaintiff. Plaintiff does not dispute that this was in fact the reason the search was conducted.

Clearly, it is permissible for penal officials to conduct such searches to ensure the security and safety of their institutions. As the United States Supreme Court has stated:

---

[7] Rec. Doc. 1, pp. 8-9; see also id. at pp. 11 and 13.

3

> Prisons, by definition, are places of involuntary confinement of persons who have a demonstrated proclivity for antisocial criminal, and often violent, conduct. Inmates have necessarily shown a lapse in ability to control and conform their behavior to the legitimate standards of society by the normal impulses of self-restraint; they have shown an inability to regulate their conduct in a way that reflects either a respect for law or an appreciation of the rights of others. ...
>
> Within this volatile "community," prison administrators are to take all necessary steps to ensure the safety of not only the prison staffs and administrative personnel, but also visitors. They are under an obligation to take reasonable measures to guarantee the safety of the inmates themselves. They must be ever alert to attempts to introduce drugs and other contraband into the premises which, we can judicially notice, is one of the most perplexing problems of prisons today; they must prevent, so far as possible, the flow of illicit weapons into the prison; they must be vigilant to detect escape plots, in which drugs or weapons may be involved, before the schemes materialize. In addition to these monumental tasks, it is incumbent upon these officials at the same time to maintain as sanitary an environment for the inmates as feasible, given the difficulties of the circumstances.
>
> ….
>
> ... A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order. We are satisfied that society would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security. We believe that it is accepted by our society that "[l]oss of freedom of choice and privacy are inherent incidents of confinement." Bell v. Wolfish, 441 U.S. [520,] 537, 99 S.Ct. [1861,] 1873[, 60 L.Ed.2d 447 (1979)].

Hudson v. Palmer, 468 U.S. 517, 525-28 (1984) (footnote omitted).

This same reasoning applies to body-cavity searches. For example, the Supreme Court noted that although it did not "underestimate the degree to which [body-cavity] searches may invade the personal privacy of inmates," "the significant and legitimate security interests of the institution" outweigh the inmates' privacy interests. Bell, 441 U.S. at 560. In Bell, the Court likewise observed: "A detention facility is a unique place fraught with serious security dangers. Smuggling of money, drugs, weapons, and other contraband is all too common an occurrence. And inmate attempts to secrete these items into the facility by concealing them in body cavities are documented in this record and in other cases." Id. at 559 (citation omitted).

4

Accordingly, Woods clearly had the right to conduct the search in this case, a point which even plaintiff does not dispute.[8] The only question, therefore, is whether the search was conducted in an unconstitutional manner. Here, plaintiff appears to argue that Woods acted impermissibly by (1) touching plaintiff during the search and (2) staring at his penis and smiling.

As to the touching, the Court will accept as a given that body cavity searches are normally conducted only visually with the prisoner manipulating his own body parts. See, e.g., Bell, 441 U.S. at 558 n.39. However, the mere fact that such a search involved touching by a penal official does not, in and of itself, render the search unconstitutional. See, e.g., Rutland v. Louisiana Department of Public Safety & Corrections, Civ. Action No. 05-1430, 2007 WL 781904 (W.D. La. Feb. 6, 2007) (Wilson, M.J.) (adopted by Minaldi, J., on March 6, 2006) (dismissing claim that correctional officer "touched plaintiff's private area and slapped him on the bare buttocks" during strip search as frivolous and for failing to state a claim on which relief may be granted); Cherry v. Frank, No. 03-C-129, 2003 WL 23205817, at *12 (W.D. Wis. Dec. 4, 2003) (dismissing claim that defendant violated plaintiff's rights when defendant "'grabbed' and 'tugged' plaintiff's penis and testicles and inserted his gloves into plaintiff's anus," noting: "Nonconsensual contact will always seem more intrusive to the object of that contact. … Any manual search of an individual's body will require some amount of manipulation of the genitals in order to accomplish the purpose of the search. Although 'grabbing' and 'tugging' could cause some discomfort and embarrassment, it does not rise to the level of unnecessary and wanton infliction of pain so long as it occurs as part of an otherwise justified search." (quotation marks omitted)), aff'd, 125 Fed. App'x 63 (7th Cir. 2005).

---

[8] Rec. Doc. 103, p. 1.

That such touching is not a *per se* violation is hardly surprising, in that even touching which is clearly inappropriate and sexual in nature is not generally actionable if it is fleeting and isolated. As the United States Fifth Circuit Court of Appeals has noted:

> While violent sexual assaults involving more than *de minimis* force are actionable under the Eighth Amendment, see Schwenk [v. Hartford, 204 F.3d 1187, 1195 & 1197 (9th Cir. 2000)], isolated, unwanted touchings by prison employees, though "despicable and, if true, they may potentially be the basis of state tort actions ... they do not involve a harm of federal constitutional proportions as defined by the Supreme Court." Boddie v. Schneider, 105 F.3d 857, 860-61 (2d Cir. 1997) (female guard sexually brushed against inmate on multiple occasions).

Copeland v. Nunan, No. 00-20063, 2001 WL 274738, at *3 (5th Cir. Feb. 21, 2001); accord Pryer v. Walker, 385 Fed. App'x 417, 418 (5th Cir. 2010) ("Pryer's claim of sexual abuse was properly dismissed because, even if it is assumed that a female prison guard rubbed his chest and made comments about his hair and chest during the performance of his electrocardiogram, Pryer has not alleged sufficiently serious assaultive behavior or resulting injury to show a constitutional deprivation."); Allen v. Johnson, No. 02-31019, 2003 WL 21017401, at *1 (5th Cir. Apr. 15, 2003) ("Allen's claim of sexual abuse was properly dismissed because, even if it is assumed that Theodore Johnson touched him in a sexual manner during routine pat-down searches, Allen has not alleged sufficiently serious assaultive behavior or resulting injury to show a constitutional deprivation."); Harold v. LeBlanc, Civ. Action No. 11-cv-1744, 2014 WL 2611725, at *3-4 (W.D. La. June 11, 2014); Ware v. Tanner, Civ. Action No. 12-2250, 2013 WL 5589506, at *6-7 (E.D. La. Oct. 10, 2013) (dismissing claim that jail doctor grabbed prisoner's penis and inappropriately stroked it during an examination for genital pain, noting that prisoner had not alleged the type of serious, sexual activity or more than a *de minimis* offensive touching of his penis which would invoke constitutional protections). Under this line of jurisprudence, Deputy Woods' touching as

6

described by plaintiff, *even if it had sexual overtones*, is not actionable in that it was nothing more than a *de minimis* use of force and a brief, isolated incident.

Lastly, in that isolated instances of actual touching are not generally actionable, then the same would necessarily be true of Woods' lesser action of allegedly staring at plaintiff's penis and smiling. This is true even if the action was intended to humiliate plaintiff. See, e.g., Reese v. Skinner, 322 Fed. App'x 381, 382 (5th Cir. 2009) (prisoner's allegations that correctional officer "participated in humiliating him" failed to state a viable claim "because verbal abuse and humiliation are not actionable under § 1983"); Howard v. Epps, Civ. Action No. 2:09cv152, 2010 WL 2925375, at *6 (S.D. Miss. Mar. 12, 2010) ("Mere humiliation is not actionable under § 1983."), adopted, 2010 WL 2925371 (S.D. Miss. July 20, 2010).

Because Woods' alleged conduct did not violate plaintiff's constitutional rights, Woods' motion for summary judgment must be granted.

**Claims Against Deputies Tapp and Harris**

In light of the foregoing finding, plaintiff's claims against Deputies Tapp and Harris must likewise be dismissed. Specifically, plaintiff claims that Tapp and Harris were present during the "sexual assault" by Woods and yet failed to protect plaintiff from that assault or report Woods' "criminal attack" to a supervising officer.[9] However, obviously, Tapp and Harris could be held liable only if Woods' action in fact violated plaintiff's rights. In that the Court has determined that no actionable violation occurred, then, necessarily, the claims against Tapp and Harris also fail. See Cherry v. Frank, No. 03-C-129, 2003 WL 23205817, at *12 (W.D. Wis. Dec. 4, 2003) (holding that because defendant Haney did not violate plaintiff's rights during a strip search, then "defendant Gerl cannot be held liable for failing to intervene to stop the search"), aff'd, 125 Fed.

---

[9] Rec. Doc. 32, p. 2.

App'x 63 (7th Cir. 2005); see also Poole v. Russell, Civ. Action No. 14-0611, 2016 WL 6082041, at *7 (W.D. La. Oct. 18, 2016) ("Here, the Court has already determined that the deputies who engaged in direct contact with Poole did not commit any constitutional violations. Therefore, the bystander deputies did not fail to intervene because there was no violation of Poole's constitutional rights."). Therefore, the claims against Tapp and Harris will be dismissed as frivolous pursuant to the Court's screening authority.[10]

Accordingly,

**IT IS ORDERED** that the motion for summary judgment filed by Deputy O. Woods is **GRANTED** and that the claim against Woods is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the claims against Deputies D. Tapp and D. Harris are **DISMISSED WITH PREJUDICE** as frivolous.

New Orleans, Louisiana, this second day of January, 2018.

*[signature: Janis van Meerveld]*
**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**

---

[10] Where, as here, a prisoner files a complaint seeking redress from an officer or employee of a governmental entity, the Court is required to "dismiss the complaint, or any portion of the complaint, if the complaint … is frivolous …." 28 U.S.C. § 1915A. Additionally, with respect to actions filed *in forma pauperis*, federal law similarly provides: "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action … is frivolous …." 28 U.S.C. § 1915(e)(2)(B)(i).