# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DESMOND C. PARKER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-1609-JVM** |
| **MARLIN N. GUSMAN, ET AL.** | |

## ORDER AND REASONS

Plaintiff, Desmond C. Parker, a state prisoner, filed this *pro se* federal civil rights action asserting various claims against a number of defendants. Through the course of the litigation all but one of the claims have been dismissed. See Parker v. Gusman, Civ. Action No. 16-1609, 2016 WL 7167938 (E.D. La. Nov. 8, 2016), adopted, 2016 WL 7156076 (E.D. La. Dec. 8, 2016);[1] Parker v. Gusman, Civ. Action No. 16-1609, 2018 WL 279628 (E.D. La. Jan. 2, 2018), appeal dismissed, No. 18-30076, 2018 WL 3414050 (5th Cir. June 21, 2018).[2] The only claim that remains is plaintiff's claim that Shontrell Cooper was deliberately indifferent to his need for medical care.

With respect to that claim, Cooper has now filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[3] Plaintiff has opposed that motion.[4] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).[5]

In reviewing a motion for summary judgment, the Court may grant the motion when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law. Fed.

---

[1] Rec. Docs. 61 and 67.
[2] Rec. Docs. 107 and 116.
[3] Rec. Doc. 123.
[4] Rec. Doc. 130.
[5] Rec. Doc. 70.

R. Civ. P. 56(c). There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

"Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (internal quotation marks omitted); accord Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001). The Court has no duty to search the record for evidence to support a party's opposition to summary judgment; rather, "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary judgment. Id.; Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996).

In her motion, Cooper argues that she is entitled to summary judgment on the claim against her on two grounds: (1) plaintiff's allegations, even if true, do not rise to a level of deliberate indifference to a serious medical need; and (2) plaintiff failed to exhaust his administrative

remedies by properly completing the jail's grievance procedure. Because the first ground has merit, the Court need not reach the second ground.

As noted, plaintiff claims that Cooper violated his constitutional right to medical care. Obviously, all inmates, regardless of whether they are pretrial detainees or convicted prisoners, have a right to medical care in jail. However, that right is a limited one, and an inmate's constitutional right to medical care is violated only if his "serious medical needs" are met with "deliberate indifference" on the part of penal authorities. See Thompson v. Upshur County, 245 F.3d 447, 457 (5th Cir. 2001); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999).

The United States Fifth Circuit Court of Appeals has explained that "[a] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006). The Fifth Circuit has held that "non-life-threatening injuries are a serious medical need where the injuries induced severe pain." Thomas v. Carter, 593 F. App'x 338, 342 (5th Cir. 2014). Here, plaintiff alleges that he had a painful ankle fracture which went without appropriate treatment and, as a result, he will suffer from arthritis for the rest of his life. Earlier in this litigation, the Court determined that plaintiff's fractured ankle was a serious medical need. Parker v. Gusman, Civ. Action No. 16-1609, 2016 WL 7167938, at *4 (E.D. La. Nov. 8, 2016), adopted, 2016 WL 7156076 (E.D. La. Dec. 8, 2016).[6]

Nevertheless, in order to prevail on his claim against Cooper, plaintiff must additionally show that she was deliberately indifferent to that serious medical need. The United States Fifth Circuit Court of Appeals has explained:

---

[6] Rec. Docs. 61 and 67.

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Rather, the plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (citations, quotation marks, and brackets omitted). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

In her motion, Cooper explains that she was simply a jail assistant whose role was limited to evaluating and responding to inmate grievances within the narrow guidelines provided by her superiors. Specifically, in the affidavit in support of her motion, she states:

1. I am of legal age and competent to make this Declaration.

2. At the time of the claims involved in this matter, I was a Medical Assistant working as the Grievance Clerk for the Orleans Justice Center. I was an employee of Correct Care Solutions beginning in 2014; and in my position, I participated in the management of grievances associated with medical care delivered in the Jail.

3. As a Grievance Clerk, I had on occasion to respond to certain inmate grievances submitted by Desmond Parker. For purposes of this Declaration, I have reviewed the grievances submitted by this inmate. Copies of all grievances to which I have access in the OJC computer system are attached to this Affidavit. (Attachment 1)

4. The internal grievance system at the Orleans Justice Center ("OJC") allows inmates to submit grievances through kiosks located on each floor. Based on my review of the records, Mr. Parker submitted a number of grievances

involving several issues. I was not involved in all of the grievance responses for Mr. Parker.

5. In preparing the response to any grievance, my role is limited. Upon receipt of the grievance, I generally review the inmate's medical record, the status of treatment, and the medication profile.

6. While grievances take many different forms, the grievances at issue in this case involve follow up medical appointments, new requests for treatment, or missed medications. Each issue is handled based on the inmate's current condition and specific grievance.

7. For example, in those cases where Mr. Parker filed a grievance related to a follow up appointment, I checked the medical record and appointment record for an existing appointment. Once I confirmed a follow up for the issue he raised, my response to the grievance was limited only to advising him that a follow-up appointment had been scheduled.

8. I do not have the authority under the security protocols at the Jail to advise an inmate of the timing of any follow-up appointment. As long as the appointment is scheduled within the coming two (2) weeks, no additional action is taken.

9. When Mr. Parker advised that he was not receiving his medication or requires additional medication, I confirmed the status of the medication, (*i.e.,* an active prescription), and checked on the last administration. I advised Mr. Parker based on those reviews. In some cases prescriptions had expired, and in others I needed more information from him.

10. In cases where Mr. Parker reported a new medical issue and seeks non-urgent care, he was advised to prepare a sick call request to be scheduled and seen through the Jail's protocol for appointment scheduling. Unfortunately, inmates sometimes attempt to use the grievance system in place of the proper sick call procedures.

11. I do not have the authority to schedule a non-urgent visit to the Medical Department through the grievance response system.

12. If an inmate submits a grievance under circumstances where he has not been scheduled for an appointment and a response is required by a higher level of care, I discuss the grievance either with my supervisor or the medical provider.

13. On review of the grievances submitted by Mr. Parker, I typically provided a response within twenty-four (24) hours. My handling of these grievances was consistent with what I outlined above.

14. On my review of each of the grievances, the responses were appropriate and within my limited authority as a Medical Assistant.

15. Mr. Parker did not complain of any condition which required an urgent referral to a higher level of care.

16. Based on the grievances submitted by Mr. Parker during his incarceration, my responses were appropriate.

17. For each of the grievances submitted by Mr. Parker, I complied with the proper procedures for a response. I took steps to ensure that the responses were timely and appropriate.

18. At no time did I act with deliberate indifference to any serious medical need identified by Mr. Parker. He was receiving continuous, routine follow-up care for his condition, and my grievance responses were entirely appropriate.[7]

In essence, Cooper's defense is founded on an argument that a prison official whose role is limited does not act with deliberate indifferent so long as she does not shirk her prescribed duties or fail to act appropriately within the narrow scope of her authority. That argument has merit. See Greeno v. Daley, 414 F.3d 645, 657 (7th Cir. 2005); Palmer v. Franz, No. 13 C 1698, 2017 WL 4122741, at *8 (N.D. Ill. Sept. 18, 2017).

Here, it must be remembered that Cooper was *not* a direct provider of medical care at the jail – she was not a physician, a nurse, or other similar direct caregiver. Instead, she was merely a grievance clerk, and, therefore, the question before the Court is simply whether she performed *that limited role* in a manner evidencing deliberate indifference to plaintiff's medical needs. See Cooper v. Johnson, 353 F. App'x 965, 968 (5th Cir. 2009) (noting limited role of grievance

---

[7] Rec. Doc. 123-4, pp. 1-3.

respondents); Wright v. Alvarez, Case No. 3:17-cv-665, 2018 WL 6046153, at *11 (M.D. Fla. Nov. 19, 2018) (same); Hall v. Wood, Civ. Action No. 1:13cv233, 2016 WL 4620005, at *5 (E.D. Tex. Aug. 10, 2016) (same), adopted, 2016 WL 4595894 (E.D. Tex. Sept. 2, 2016).

In his response to Cooper's motion, plaintiff primarily focus on the fact that his medical problem went unresolved. However, even if that is true, his complaints generally concerned matters outside of Cooper's limited scope of authority. For example, the Court has reviewed each of the following grievances plaintiff has challenged in his response to the pending motion and finds nothing improper in any response by Cooper:

In Request #218549,[8] plaintiff expressed his dissatisfaction with Dr. Nguyen and requested to be seen by Dr. Holt. The following day, Cooper responded stating that she would forward plaintiff's request to "Medical Administration." He complains that it then took almost a month for someone from "Medical Administration" to respond. However, there is no evidence that Cooper failed to forward the request to "Medical Administration" in a timely manner as stated or that any delay in the response from "Medical Administration" was Cooper's fault. That is fatal because, obviously, "[p]ersonal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983).

In Request #322196,[9] plaintiff complained that he was not being allowed to take a chair into the shower as needed due to his ankle injury. Chaz Ruiz (not Cooper) responded, stating that plaintiff's grievance had been forwarded to the medical unit. Plaintiff complains that the medical

---

[8] Rec. Doc. 130-1, p. 2.
[9] Id. at p. 3.

unit did not respond. Again, there is no evidence that Cooper was in any way involved or at fault in that dispute.

In Request #331139,[10] plaintiff complained that he submitted three sick calls in as many weeks without effect. The following day, Cooper responded that she would speak to the sick call nurse. There is no evidence that Cooper did not do so. On the contrary, plaintiff's medical records show that he was shortly thereafter examined in the medical department.[11]

In Request #331787,[12] plaintiff stated that his heel was hurting and that he wanted to see an orthopedic surgeon. That same day, Cooper responded by instructing plaintiff to submit a sick call request. That response was appropriate, because "it is not a constitutional violation for prison officials to require inmates to submit 'sick call' requests for non-emergency medical concerns." Kitchen v. Webre, Civ. Action No. 13-6705, 2014 WL 2566065, at *5 (E.D. La. May 14, 2014); accord Alexander v. Texas Department of Criminal Justice, Civ. Action No. H-16-3520, 2017 WL 5749548, at *3 (S.D. Tex. Nov. 28, 2017) ("[Prisoner]'s allegation that a nurse practitioner told him to submit a sick call request to see a physician about his need for pain medication does not establish that he was denied care with the requisite deliberate indifference for purposes of stating a claim under the Eighth Amendment."); Curtis v. Gonzales, Civ. Action No. SA-09-CV-0911, 2010 WL 3928521, at *3 (W.D. Tex. Oct. 5, 2010) (Nowak, M.J.) ("Rather than ignore [the prisoner]'s complaints, [prison] employees instructed [the prisoner] to comply with prison procedures for seeking medical treatment. Such conduct does not evince a wanton disregard for a

---

[10] Id. at p. 4.
[11] See Rec. Doc. 123-5, pp. 17-20 and 28.
[12] Rec. Doc. 130-1, p. 5.

serious medical need.") (adopted by Garcia, J., on December 10, 2010); Maxwell v. Epps, No. 4:04CV168, 2007 WL 4287712, at *2 (N.D. Miss. Dec. 4, 2007).[13]

In Request #343384,[14] plaintiff complained that the nurses were giving him only Tylenol when he needed to see an orthopedic surgeon. The following day, Cooper responded that plaintiff would be scheduled to see a medical provider. Plaintiff's medical records show that he was in fact seen in the medical unit by Dr. Kennedy on June 14, 2016, within one week of Cooper's response to plaintiff.[15]

Over the course of September 9-14, 2016, plaintiff then submitted three grievances. In Request #376054,[16] he again complained that he needed to see an orthopedic surgeon. In Request #376996,[17] he complained that he had been to four visits in a row in the medical unit but had not seen a doctor. In Request #377810,[18] he complained that he was experiencing pain and numbness as a result of his foot injury. In each instance, Cooper promptly responded that plaintiff was already scheduled to see a medical provider and that he should discuss his concerns with the provider during his visit. That was a proper response; moreover, plaintiff's medical records show that he was in fact seen in the medical unit shortly thereafter on September 16, 2016.[19]

---

[13] In his response to the pending motion, plaintiff expresses frustration with the suggestion that he submit another sick call request because his very complaint was that the sick call system was not giving him the satisfaction he desired. See Rec. Doc. 130, p. 3. While the Court understands plaintiff's frustration, any defects in the efficacy of either the sick call procedure or the grievance procedure were outside of Cooper's purview. Again, she was merely a grievance clerk, and the fact that plaintiff was dissatisfied with her responses to his grievances and her limited scope of authority within the grievance procedure was not in and of itself actionable. On the contrary, it is clear that an inmate does not have a constitutional right to an adequate and effective grievance procedure or to have his complaints investigated and resolved to his satisfaction. Bonneville v. Basse, 536 F. App'x 502, 503 (5th Cir. 2013); Propes v. Mays, 169 F. App'x 183, 184-85 (5th Cir. 2006); Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005).
[14] Rec. Doc. 130-1, p. 6.
[15] See Rec. Doc. 123-5, pp. 28-31.
[16] Rec. Doc. 130-1, at p. 7.
[17] Id. at p. 8.
[18] Id. at p. 9.
[19] See Rec. Doc. 123, pp. 25-27 and 75. To the extent that plaintiff is perhaps challenging the fact that he was sometimes seen in the medical department by a medical professional *other than a doctor*, that argument fails for two

In summary, there is no competent summary judgment evidence showing that Cooper personally violated plaintiff's constitutional rights to medical care. Rather, the evidence shows that she in fact responded appropriately to plaintiff's medical concerns in a timely manner within her narrow range of duties and limited scope of authority.

Accordingly,

**IT IS ORDERED** that the motion for summary judgment filed by Shontrell Cooper, Rec. Doc. 123, is **GRANTED** and that the claim against her is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this fourth day of February, 2019.

_____
**JANIS VAN MEERVELD
UNITED STATES MAGISTRATE JUDGE**

---

reasons. First, although the Constitution requires that an inmate be provided with medical care, it does not require that the inmate be seen by a physician on demand or on all occasions. See, e.g., Minch v. Abbott, Civ. Action No. 2:13-cv-00630, 2014 WL 1666197, at *6 (W.D. Pa. Apr. 25, 2014) ("It is well established that an inmate does not have a constitutional right to see a doctor on demand or the doctor of his choice."); Shannon v. Department of Public Safety and Correctional Services, Civ. Action No. ELH-11-1830, 2012 WL 1150802, at *8 (D. Md. Apr. 5, 2012) ("[Prisoner] did not have a right to demand treatment from a specific medical provider."). Second, Cooper obviously did not have the authority to direct which specific medical professional tended to plaintiff's needs.